# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CYRUS NOWIA-PAHLAVI,**

**Plaintiff,**

**-vs-** **Case No. 6:08-cv-36-Orl-19DAB**

**HAVERTY FURNITURE COMPANIES, INC., MICHAEL MCGAUHEY, MARC GINTER, MARK MOEGE,**

**Defendants.**

---

## ORDER

This cause came on for consideration during a conference with counsel on, among other matters, the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO COMPEL AND MOTION FOR SANCTIONS (Doc. No. 25)** |
| **FILED:** | **April 11, 2008** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part.

### *BACKGROUND*

The instant motion, and matters revealed at status conference subsequent to the motion, arise from a series of unfortunate and, in the opinion of this Court, likely unprofessional choices made by Plaintiff's counsel, Michael T. Sheridan, in this matter. Due to the significance of the conduct, the Court **grants** the motion for sanctions, to the extent it seeks a finding of entitlement to same, but **defers** the actual award of sanctions, pending further case developments.

Based on the record, and the representations made by counsel at hearing, the Court makes the following findings of fact. As set forth in the motion and in the Court's earlier Order and Notice of Hearing (Doc. No. 27), prior to the conduct at issue here, defense counsel contacted Plaintiff's counsel in an effort to schedule Plaintiff's deposition in this employment discrimination action. Defense counsel offered several dates for the taking of Plaintiff's deposition. Plaintiff's counsel counter-offered earlier dates, but, on March 16, counsel eventually selected April 11, 2008 as the date. Thus, on March 17, Defendant noticed the deposition for 8:30 a.m. on the date chosen by Plaintiff. Defense counsel and his client representative made travel arrangements (hotel and plane reservations), secured a court reporter, and prepared to go forward.

Late in the afternoon of April 8, 2008, the Tuesday before the Friday morning deposition, Sheridan emailed defense counsel, asserting that the deposition could not go forward because defense counsel did not "voluntarily produce" documents defense counsel intended to use at the deposition, and thus Plaintiff and his counsel were unprepared (Doc. No. 24-2). Sheridan asserted that because Defendants "intend to question Plaintiff about documents which Plaintiff, most likely, has not seen before, and, most certainly, Plaintiff's counsel has never seen before," the noticed deposition must be "indefinitely continued." *Id.* Defense counsel emailed back at 7:16 that evening, advising Plaintiff's counsel that the reasons provided for canceling the deposition were without merit, reminding him that he chose the date, and that travel arrangements were already made, and stating: "I need to know your final position as to whether you will or will not produce Mr. Pahlavi Friday." (Doc. No. 24-2).

No response to that email was made that evening.

On Wednesday, April 9, at 9:15 am, defense counsel again emailed Plaintiff's counsel, with additional reasons why the position taken by Plaintiff had no merit, and noted: "We will be at the site at 8:30 Friday morning unless you instruct us that you will not be presenting Mr. Pahlavi for deposition." (Doc. No. 24-3). No response was made that day.

At 9:40 on Thursday morning, April 10, less than 24 hours before the scheduled deposition, Plaintiff's counsel responded to the Wednesday email with one sentence: "I will be filing a Motion for Protective Order today." (Doc. No. 24-4). At 10:31 a.m., defense counsel replied, noting that a motion for protective order is not self-executing, and advising that Plaintiff could either show up for his deposition, obtain an order that day to excuse attendance, or "[i] f your intent is to not produce [Plaintiff] tomorrow regardless whether you obtain an order today, you should inform us immediately" in order to "avoid the cost of two expensive plane tickets" (Doc. No. 24-5).

Plaintiff did *not* file a motion for protective order on Thursday, nor did counsel respond to Defendant's email. In light of those circumstances, Defendant's corporate representatives boarded a plane and flew to Orlando, and defense counsel traveled to Orlando from Tampa and checked into his hotel, to prepare for the deposition to be held at 8:30, the next morning.

At 2:23 a.m. on Friday, April 11, the day of the scheduled deposition, Plaintiff's counsel filed a Motion for Protective Order (Doc. No. 23), seeking to be excused from attending the deposition, asserting the same grounds outlined above. According to the Court Reporter's Certificate of Non-Appearance (Doc. No. 24-6), while Defendant and its counsel attended, neither Plaintiff nor his counsel appeared at the deposition that morning. Defendant filed a response to the motion (Doc. No. 24) as well as the instant motion to compel and for sanctions (Doc. No. 25), shortly thereafter.

At 3:00 that afternoon, following the filing of the instant motion, Sheridan filed a "Notice of Withdrawing Motion for Protective Order and Motion for Leave to File Excuse for Non-Appearance at Deposition and Accompanying Medical Records Under Seal" (Doc. No. 26). In that motion, Sheridan stated:

> Plaintiff CYRUS NOWIA-PAHLAVI ("NOWIA-PAHLAVI"), by and through his undersigned counsel, pursuant to Middle District Discovery (2001) at 1, hereby gives prompt notice of withdrawing his previously-filed Motion for Protective Order and Incorporated Memorandum of Law, filed in this cause on April 11, 2008 (Doc. No. 23). At the time the motion was filed, counsel for Plaintiff NOWIA-PAHLAVI had not yet been made aware of certain events affecting the health and welfare of Plaintiff, which occurred late in the evening on April 10, 2008. Had counsel for Plaintiff known of these events, the Motion for Protective Order, withdrawn by this Notice, would not have been filed in the very early morning hours of April 11, 2008.

Doc. No. 26.

Counsel sought leave to file "highly personal, very confidential" medical information under seal, as a proffered excuse for non-attendance. By Order dated April 15, 2008, the Court denied Plaintiff's motion for protective order, to the extent it was not withdrawn, and granted, in part, the motion to file excuse and medical records under seal (Doc. No. 27). In the Order, the Court noted that the motion for protective order was untimely and wholly without merit. While the Court allowed the filing of the excuse under seal, the Court ordered Plaintiff and his counsel to appear in person at a show cause hearing. *Id.*

The docket reflects that Sheridan filed the excuse (as well as a motion to strike an affirmative defense). In the excuse, counsel set forth certain matters[1] and represented that he "had no knowledge of these events" until he received a telephone call from one of Plaintiff's friends at 12:21 p.m., on

[1]As the filing is under seal, the Court will not reveal the nature of Plaintiff's excuse, save for the fact that Sheridan asserted in his papers that he was not previously aware of it.

April 11, 2008. Upon review of the excuse, it appeared to the Court that Plaintiff could not appear in person for the hearing, and the hearing was re-noticed to reflect a status conference with counsel (Doc. No. 31). Defendant filed a response to the sealed filing (Doc. No. 33), as well as an itemization of its costs incurred due to the Plaintiff's non-attendance (Doc. No. 34).

On April 23, 2008, counsel appeared telephonically, as ordered. At that time, in response to the Court's inquiry regarding what happened with respect to the deposition and the middle of the night filing of the motion for protective order, Sheridan stated as follows:

> Mr. Sheridan: Again, your Honor, unfortunately (inaudible) I had a client who was mentally and psychologically deteriorating. By Wednesday even into Thursday I didn't know what was going on. I didn't know what was up with him. I couldn't get him to communicate with me. I couldn't locate him. When I did find him, he was in a questionable mental state. I did not know that he was going to (inaudible). I knew that something was up. I didn't wish to prejudice his position in the case by declaring my unprofessional assessment of the current mental state. So I was kind of caught between a rock and a hard place and I did unfortunately did what I did. And I apologize to the Court and Mr. Wiley for having done so. I just didn't know what else to do. . . .I grasped at a straw is what I did. . . .

(Doc. No. 39 at 4-5). For his part, defense counsel confirmed that he was not told anything about Plaintiff's mental state until the hearing, noting: "This is the first time we heard about Mr. Sheridan had some understanding that week that his client was in difficult emotional state." Transcript at 5.

Based on the above, it appears to this Court that Mr. Sheridan knew that his client was having mental health difficulties and would thus be unlikely to perform well at his deposition (or, indeed, even show up), that counsel "did not wish to prejudice his position in the case" by letting defense counsel know the truth, so Sheridan knowingly concocted a meritless position and advocated same to defense counsel and then again to this Court, in what can only be interpreted as an effort to delay discovery. As counsel no doubt realizes now, as evidenced by his mea culpa at the conference, such

conduct falls well below the standard expected of counsel appearing in this Court, and, indeed, any Court.

Having found reason to believe that misconduct has occurred, the Court next addresses the issue of appropriate sanctions. As it appears that Mr. Sheridan's behavior may have ethical implications (*see, e.g.,* Rule 4-4.1 Truthfulness in Statements to Others, *Rules Regulating The Florida Bar*), the Court finds it appropriate to refer this matter to the Grievance Committee of the Bar of the Middle District Court, as set forth in Local Rule 2.04(e)(1), for an investigation and recommendation.

In addition, Defendants have incurred significant costs that they would not have incurred at this point in time, had Sheridan either been truthful about Plaintiff's inability to be deposed, or had simply timely responded to defense counsel's repeated requests that Sheridan confirm his intentions regarding attendance. While this would normally warrant the sanction of requiring Plaintiff's counsel to reimburse Defendants and defense counsel for all unnecessary out of pocket costs in connection with the deposition, the Court is mindful that, absent any misconduct, these costs would not normally be recoverable by a defendant as a matter of course. As recovery of these costs normally would depend on the determination of the merits of the action, Defendants have only been prejudiced to the extent they must *again* prepare for and attend Plaintiff's deposition. As that may or may not happen at this point, the Court **defers** the award of these costs, pending further case developments.

**DONE** and **ORDERED** in Orlando, Florida on April 28, 2008.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Chairman of the Grievance Committee