# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CYRUS NOWIA-PAHLAVI,

     **Plaintiff,**

-vs-            Case No.  6:08-cv-36-Orl-19DAB

HAVERTY FURNITURE COMPANIES,
INC., MICHAEL MCGAUHEY, MARC
GINTER, MARK MOEGE,

     **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO REOPEN CASE (Doc. No. 49)** |
| **FILED:** | **February 18, 2009** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED** and the case remain closed.

| | |
|---|---|
| **MOTION:** | **MOTION FOR "RELIEF FROM ORDER" (Doc. No. 54)** |
| **FILED:** | **March 23, 2009** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED** and the case be dismissed, and a final judgment be entered that Plaintiff take nothing on his claim.

The present motions arise from a series of most unfortunate events, summarized herein. At the onset the Court notes that the motions were filed by an attorney not eligible to practice law in Florida.[1] This ground alone warrants striking the motions. *See* Local Rules 2.01(b), 2.04. Due to the importance of the issues raised, however, the Court addresses the merits of the motions, and **respectfully recommends** that the motions be **denied,** the Complaint be **dismissed, with prejudice,** and the Court enter final judgment accordingly.

**Background**

On January 8, 2008, Plaintiff filed a Complaint against his ex-employer and others, alleging violation of Title VII of the Civil Rights Act of 1964, and pendant state law claims (Doc. No. 1). Defendants moved to dismiss numerous counts of the Complaint (Doc. No. 16), Plaintiff did not object (Doc. No. 20), and the Court obliged (Doc. No. 21). Defendants answered the remaining counts (Doc. Nos. 17, 18) and, on March 19, 2008, the Court entered a Case Management and Scheduling Order (Doc. No. 19), based on the dates provided by the parties in the Case Management Report (Doc. No. 15). According to the Order, discovery was to conclude by August 25, 2008, and a jury trial was set for the February 2009 trial term.

On April 11, 2008, at 2:23 a.m., Plaintiff, through attorney Michael Sheridan, filed a motion for protective order, seeking to excuse Plaintiff from attending his own deposition, which was scheduled for 8:30 a.m., *that same day* (Doc. No. 23). Defendants filed a prompt response that afternoon (Doc. No. 24), as well as a motion to compel and for sanctions (Doc. No. 25). The Court found Plaintiff's motion to be not only untimely, but completely baseless on the merits. As the Court summarized, in its Order denying the motion for protective order:

_____

[1]According to the public records of The Florida Bar, Mr. Sheridan was ineligible to practice law from February 28, 2009 to April 13, 2009.

According to the motion and Defendant's response (Doc. No. 24), defense counsel offered several dates for the taking of Plaintiff's deposition, Plaintiff's counsel offered earlier dates but eventually selected April 11, Defendant noticed the deposition for the date chosen by Plaintiff, defense counsel and his client representative made travel arrangements, hotel and plane reservations, secured a court reporter, and prepared to go forward, and then – at the last possible moment – Plaintiff's counsel asserted that the deposition could not go forward because defense counsel did not "voluntarily produce" documents counsel intended to question Plaintiff on at his deposition. Because Defendants "intend to question Plaintiff about documents which Plaintiff, most likely, has not seen before, and, most certainly, Plaintiff's counsel has never seen before," Plaintiff asserted that he is entitled to be excused from his deposition. Plaintiff is mistaken.

First and foremost, there is no requirement in the Rules, the case law, or common sense that makes taking a deposition contingent on the deponent knowing in advance exactly what the questions will be. Secondly, there is no reason that Plaintiff could not have promulgated a Request for Production of Documents, to the extent he believes there are "unknown" relevant documents, and used same to prepare for his deposition. His failure to do so is not the fault of Defendant. Finally, the Court reminds Plaintiff that this is *his* Complaint before the Court. There is nothing unfair or inappropriate about being required to answer truthfully under oath about the basis of your lawsuit; especially when you picked the date and you knew about it weeks in advance.

(Doc. No. 27).[2]

Following the filing of Defendants' response to Plaintiff's motion and Defendants' motion for sanctions, Plaintiff filed a paper which purported to withdraw the motion, in favor of being allowed to file an "excuse" for nonappearance at the deposition (Doc. No. 26). According to that paper, at the time the motion for protective order was filed, attorney Sheridan "had not yet been made aware of certain events affecting the health and welfare of Plaintiff, which occurred late in the evening on April 10, 2008." Plaintiff's counsel stated that had he known of these events, the Motion for Protective Order "would not have been filed in the very early morning hours of April 11, 2008." Plaintiff sought "as an alternative" to the motion for protective order, to file a motion to excuse his non-appearance

---

[2]A more complete recitation and timeline of the events leading up to the filing of the baseless motion is found in the Court's Order of sanction at Doc. No. 41.

at the deposition, due to a "highly personal," "confidential" and "sensitive" reason, which Plaintiff did not set forth, but said he would "as soon as it is reasonably possible and practical to do so." (Doc. No. 26, 27). The Court granted leave to file the "excuse" under seal, and set a show cause hearing why sanctions should not be imposed against Plaintiff for failure to attend his deposition (Doc. No. 27).

Plaintiff made the filing under seal on April 18, 2008. While the Court would normally use discretion in revealing what is included in the sealed file, Plaintiff's counsel has made numerous public disclosures of the gist of the matter, in filings and in a hearing before the Court. Suffice it to say, the sealed filing reported an acute mental health crisis allegedly suffered by Plaintiff on the eve of his deposition date. In view of the matters contained in the sealed filing, the Court found that it appeared that it was not appropriate for Plaintiff and his counsel to personally attend the show cause hearing at that time, and "in view of the numerous new developments of record," scheduled a status conference with counsel (Doc. No. 31).

Defendants filed a Response to the sealed filing (Doc. No. 33), noting that it appeared that Sheridan "apparently intended all week not to present plaintiff at deposition on April 11" and yet failed to inform Defendants.[3] Defendants dropped their demand to set Plaintiff for immediate deposition (in view of his precarious mental health), but sought sanctions of the fees and expenses incident to the aborted deposition (Doc. No. 34).

The Court held a conference on April 23, 2008, and counsel appeared telephonically (Doc. No. 37). At that conference, in response to the Court's inquiry regarding what happened with respect to

_____

[3]Defendants also noted prior "inappropriate litigation tactic[s]," including Mr. Sheridan's email to Haverty's general counsel, demanding immediate payment of 3 million dollars "after tax" by "5:00 on Monday August 20," or else plaintiff would "take this matter to the court of public opinion and do everything within his power to see that public opinion is turned against the company" so that its sales and stock would be negatively impacted. Doc. No. 33, citing Doc. No. 32-1.

the deposition and the middle of the night filing of the motion for protective order, Sheridan stated as follows:

> Mr. Sheridan: Again, your Honor, unfortunately (inaudible) I had a client who was mentally and psychologically deteriorating. By Wednesday even into Thursday I didn't know what was going on. I didn't know what was up with him. I couldn't get him to communicate with me. I couldn't locate him. When I did find him, he was in a questionable mental state. I did not know that he was going to (inaudible). I knew that something was up. I didn't wish to prejudice his position in the case by declaring my unprofessional assessment of the current mental state. So I was kind of caught between a rock and a hard place and I did unfortunately did what I did. And I apologize to the Court and Mr. Wiley for having done so. I just didn't know what else to do. . . .I grasped at a straw is what I did. . . .

(Doc. No. 41, quoting Doc. No. 39 at 4-5). For his part, defense counsel confirmed that he was not told anything about Plaintiff's mental state until the hearing, noting: "This is the first time we heard about Mr. Sheridan had some understanding that week that his client was in difficult emotional state." Transcript at 5.

Based on the above, the Court made a finding that "Mr. Sheridan knew that his client was having mental health difficulties and would thus be unlikely to perform well at his deposition (or, indeed, even show up), that counsel "did not wish to prejudice his position in the case" by letting defense counsel know the truth, so Sheridan knowingly concocted a meritless position and advocated same to defense counsel and then again to this Court, in what can only be interpreted as an effort to delay discovery." (Doc. No. 41). The Court referred the matter of Mr. Sheridan's behavior to the Grievance Committee of the Bar of the Middle District Court (Doc. No. 41), deferred the imposition of costs as sanction, and, "in view of Plaintiff's apparent present inability to participate in the prosecution of this action," ordered the case stayed, directing the filing of a status report in 60 days, advising as to Plaintiff's condition (Doc. No. 40).

On June 26, 2008, Sheridan filed a status report (Doc. No. 42). Counsel reported that Plaintiff underwent a three hour evaluation by "psychiatrist Dr. David Baker-Hargrove"[4] and Plaintiff had executed a release authorizing Dr. Baker-Hargrove to "verbally release his professional opinions relative to Plaintiff's present psychiatric condition." (Doc. No. 42). The status report noted that no written report was requested by counsel, and thus, the status report contained only the representations of Mr. Sheridan as to the conclusions of Dr. Baker-Hargrove.

According to Sheridan, "Dr. Baker-Hargrove diagnosed Plaintiff as being delusional, severely depressed, suicidal, emotional[ly] unstable, and psychologically unsettled" (Doc. No. 42 at 2) and treatment was strongly recommended. Despite a diagnosis that Plaintiff was, among other things, currently delusional, Plaintiff's counsel urged that the matter proceed and Plaintiff be deposed, under a set of restrictions which would allow Plaintiff free reign to "tell his story" but would limit any cross-examination (Doc. No. 42).[5] Not surprisingly, Defendants objected to such a suggestion (Doc. No. 43) and moved to dismiss the action (Doc. No. 44).

The Court declined to grant the dismissal (finding that it was inappropriate to sanction litigants for mental illness); declined to allow the proposed deposition (finding that it would violate Defendants' due process rights and would be useless, in any event, considering Plaintiff's delusional state); and recommended that the action be abated and administratively closed for a period of six months, on the following terms:

> If appropriate, either party may file a properly supported motion (including compliance with Local Rule 3.01(g)) to reopen the case, either because Plaintiff is able to proceed or he has a proper representative who can continue the action. If Plaintiff

---

[4]In fact, Dr. Baker-Hargrove is a psychologist, not a psychiatrist.

[5]According to Mr. Sheridan, Dr. Baker-Hargrove warned that if "Plaintiff does not have the opportunity to be deposed. . . he would in all probability, attempt suicide again." (Doc. No. 42 at 3).

fails to take any appropriate action within the six month period, it is respectfully recommended that the action be dismissed, without prejudice, for failure to prosecute.

(Doc. No. 45).

Plaintiff's counsel filed objections to Defendants' "unauthorized" filing of a response to the status report and the filing of a motion to dismiss, but did not appear to object to the Recommendation (Doc. No. 46). On August 21, 2008, the District Judge found the objections to be without merit and adopted this Court's recommendation, abating the case for six months subject to the above conditions (Doc. No. 48).

On February 18, 2009, just before the expiration of the six month deadline, Plaintiff filed a motion to reopen the case (Doc. No. 49). The motion included a brief, one page letter purporting to be from Dr. Baker-Hargrove, stating that Plaintiff "does not exhibit any mental health disorder or related clinical syndrome that would prevent him from participating in any civil court proceedings"(Doc. No. 49-2). Defendants responded by moving to dismiss or alternatively moving to order Plaintiff examined by a court appointed psychiatrist (Doc. No. 52). In Order dated February 24, 2009, the undersigned deferred the motion to reopen and granted the motion for examination (Doc. No. 53), noting:

> As the papers reflect, Plaintiff's mental status is still at issue. Although Plaintiff offers a brief, one page opinion of Dr. Baker-Hargrove that Plaintiff "does not exhibit any mental health disorder or related clinical syndrome that would prevent him from participating in any civil court proceedings" (Doc. No. 49-2), the opinion raises more questions than answers. Initially, the Court notes that the opinion is dated October 22, 2008, and is allegedly based on the June evaluation (which found Plaintiff to be actively suicidal and severely mentally ill) and one follow up interview of indeterminate scope and duration, conducted October 6, 2008. The opinion does not purport to speak of Plaintiff's current condition. Moreover, there is no explanation or basis for the opinion, which the Court notes is completely contrary to Dr. Baker-Hargrove's prior opinion, as represented by Plaintiff's counsel (Doc. No. 42). Indeed, there is no evidence that Plaintiff underwent the recommended therapy or any

other treatment in the interim between the June evaluation and the October visit, which might serve to explain such a recovery; nor is there any explanation offered as to why, if Plaintiff fully recovered in October, the present motion was not filed until mid-February. Plaintiff has not met his burden of showing that he is currently able to proceed in this action.

(Doc. No. 53).

The Court allowed Plaintiff a final opportunity to make the required showing by presenting himself and any pertinent medical records to psychiatrist Jeffrey A. Danziger, M.D., by March 27, 2009, for an Independent Medical Examination at Plaintiff's expense regarding his current mental status and competency to go forward with this litigation. *Id.* The Court advised that it would review Dr. Danziger's report, and would make a recommendation to the district judge regarding whether Plaintiff is fit to proceed. *Id.*

The Court also advised that the re-opening of the matter was to be conditional on the payment of the fees and costs incurred by Defendants and found to be appropriate by prior Order (Doc. No. 41). The Court ordered that, should Plaintiff be found fit to proceed, Plaintiff's counsel must then reimburse defense counsel in the amount of $6,770.40 (the amount claimed by Defendants as direct expense of the aborted deposition caused by Mr. Sheridan) as a condition precedent to reopening the case and allowing it to go forward. (Doc. No. 53). If Plaintiff was not found to be fit, then the sanction was not payable. The Court was very specific with what was required, and concluded with the following: "Failure to present for the IME will result in a recommendation that the case be dismissed for failure to prosecute." (Doc. No. 53).

Plaintiff did not present to Dr. Danziger, but filed the instant Motion for Relief on March 23, 2009. The motion is accompanied by two Affidavits (Doc. No. 55 and 56), and Defendants have filed a Response (Doc. No. 57).

**Analysis**

The motion is styled as a Rule 60(b)(6) motion, seeking relief from the Court's Order at Doc. No. 53. Use of this Rule is inappropriate in this context. There is no "judgment," and, to the extent the motion is an objection to the undersigned's Order, it is untimely. *See* Rule 72, Federal Rules of Civil Procedure. Even if the Court were to consider the motion as one for reconsideration, Plaintiff's counsel fails to set forth any tenable ground for relief. In view of the history set forth above, Plaintiff's current position constitutes evidence of a continual failure to prosecute his case to Defendants' prejudice.

Mr. Sheridan claims, for the first time, that he is unable to pay the sanctions resulting from his misconduct, and contends that his client, alleged to be the son of the former Shah of Iran, is similarly unable to pay for the IME the Court ordered. After detailing at great length the dire financial circumstances both Plaintiff and his counsel are currently allegedly experiencing (complete with threats of bankruptcy, current creditors' lawsuits, and pending foreclosures), Sheridan nonetheless suggests that *Defendants* be ordered to pay for the IME and further suggests that, in lieu of paying the sanctions now, the Court should reduce the sanctions and the IME cost to a judgment at the close of the trial. To the extent Mr. Sheridan has all but admitted that neither he nor his client can or will pay any such judgment, the suggestion is disingenuous at best.

To be clear, the Court is *not* recommending that the case be dismissed because neither Plaintiff nor his counsel can pay; rather, the Court finds that the instant excuse is just the latest in a series of excuses for why Plaintiff continues to fail to prosecute his case. The Court reminds counsel that the imposition of sanctions was due *directly* to his refusal to communicate with defense counsel about his intention not to appear at the deposition on the date *he* chose. Instead, counsel filed a last minute frivolous motion with this Court (*see* Rule 11, Fed. R. Civ. P.) and told this Court that his client was

deeply, seriously mentally ill and required intensive treatment. Having obtained a stay, allegedly in order for Plaintiff to obtain that life or death treatment, Plaintiff presents no evidence that he, in fact, received any treatment. Rather, Plaintiff presents a brief, conclusory statement that Plaintiff merely attended a single "follow up" interview in October and that, as of the date of that October letter, Plaintiff has no mental health disorder relevant here. Plaintiff continues to offer *no possible explanation* for his recovery absent *any* treatment, and the Court is left to wonder if Mr. Sheridan's initial representations were, in fact, truthful. Regardless, it is undisputed that even though Plaintiff was given a clean bill of mental health in *October,* Plaintiff did not move to reopen the case until *mid-February 2009.*

The prejudice to Defendants is obvious and significant. Over time, witnesses disappear and memories fade. Moreover, assuming the truth of Plaintiff's and counsel's current dire circumstances, it is unclear how the litigation can proceed without the payment of necessary costs, such as for mediation, copies and court reporters, required to be borne by *both* parties. The Court is without authority or inclination to allow a plaintiff to prosecute a civil action at the initial expense of a defendant.

Plaintiff has been given numerous opportunities to proceed in this matter. His repeated failure to prosecute warrants dismissal of the case, with prejudice. It is **respectfully recommended** that the District Court deny the motion to re-open the case, deny the motion for relief, and dismiss this action, with prejudice. If adopted, the Clerk should be directed to enter judgment accordingly. It is further recommended that a copy of this Report and any Order issued with respect to this Report be forwarded to The Florida Bar for appropriate action.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 14, 2009.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy